UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL ZEISS X-RAY MICROSCOPY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SIGRAY, INC.,<br><br>Defendant. | Case No. 21-cv-01129-EJD   (VKD)<br><br>**ORDER RE PLAINTIFF'S MOTION TO DECLARE THE SUFFICIENCY OF ITS TRADE SECRETS IDENTIFICATION AND TO COMPEL PRODUCTION OF DOUCMENTS**<br><br>Re: Dkt. No. 65 |

Plaintiff Carl Zeiss X-Ray Microscopy, Inc. ("Zeiss") sues defendant Sigray, Inc. ("Sigray") for patent infringement, trade secret misappropriation, and unfair competition. Dkt. No. 15. Zeiss now moves for an order declaring that its identification of trade secrets complies with the requirements of California C.C.P. § 2019.210 and requiring Sigray to produce documents sufficient to show the structure, function, and operation of Sigray's accused products. *See* Dkt. No. 65; Dkt. 65-5 at 6. The Court held a hearing on the motion on October 19, 2021. Dkt. No. 73.

Having considered the parties' submissions and arguments presented at the hearing, the Court denies Zeiss's motion regarding the sufficiency of its trade secrets identification and to compel production of documents.

**I.    BACKGROUND**

Zeiss alleges that it owns trade secret information relating to the manufacturing and qualification of condenser lenses and scintillators for use in x-ray microscopes. Dkt. No. 15 ¶ 93; Dkt. No. 65 at 2. It says that it acquired these trade secrets when its parent company acquired Xradia, Inc. ("Xradia") in 2013. Dkt. No. 15 ¶¶ 21, 24, 26. Shortly after Xradia's acquisition, Dr. Wenbing Yun, one of Xradia's co-founders, left the company and formed Sigray, now a

competitor of Zeiss. *Id.* ¶¶ 47–48, 54. According to Zeiss, Sigray's x-ray microscopes include lenses and scintillators produced and qualified using trade secrets misappropriated from Zeiss. *Id.* ¶¶ 59-62. In addition, Zeiss alleges that Sigray infringes U.S. Patent Nos. 7,057,187 and 7,400,704. *Id.* ¶¶ 11-20, 64-90. The '187 patent is directed to alleged inventions concerning a "scintillator optical system," and the '704 patent is directed to alleged inventions concerning an "x-ray imaging system." *Id.*, Exs. A, B.

On May 26, 2021, the parties jointly proposed a case management schedule. Dkt. No. 56. As explained by the parties, their joint proposal reflected "modifications of the original joint proposed schedule and default deadlines set by the Patent Local Rules." *Id.* at 12. As relevant to this dispute, the parties advised that they had agreed to coordinate patent infringement and trade secret disclosures as follows:

- Zeiss identifies its trade secrets to Sigray pursuant to CCCP Section 2019.210: June 3, 2021, or one (1) day after entry of the protective order, whichever is later;

- Sigray produces technical documents sufficient to show the structure, function, and operation of the Sigray Accused Products, including the individual components thereof, in response to Zeiss' First set of Requests for Production: ten (10) days after Zeiss serves its identification of trade secrets pursuant to CCCP Section 2019.210, or June 13, whichever is later;

- Zeiss serves its Disclosure of Asserted Claims and Infringement Contentions and accompanying document production pursuant to Patent Local Rules 3-1 and 3-2: eight (8) days after Sigray completes the foregoing technical document production[;]

- Sigray serves its Invalidity Contentions and accompanying document production pursuant to Patent Local Rules 3-2 and 3-4: forty-five (45) days after Zeiss serves the foregoing disclosures[.]

*Id.* The presiding judge adopted the parties' proposals through the proposed deadline for summary judgment proceedings and entered a case management order. Dkt. No. 58.

Zeiss served a document identifying its trade secrets on June 23, 2021. Dkt. 65 at 2. Sigray challenged the sufficiency of the disclosure, and Zeiss responded by serving a First Amended Identification of Trade Secrets on August 6, 2021. Dkt. No. 65-2; *see* Dkt. No. 64-5. Zeiss contends that its trade secrets disclosure now complies with California C.C.P. § 2019.210

1   and that Sigray should be required to produce all technical documents sufficient to show the

2   structure, function, and operation of the accused Sigray products, per the case management order.

3   Dkt. No. 65 at 7–8. Sigray continues to dispute the sufficiency of Zeiss's trade secrets disclosure.

4   Dkt. No. 67. Because it believes Zeiss has not yet complied with its obligation to identify its trade

5   secrets pursuant to C.C.P. § 2019.210, Sigray has not produced its technical documents. Dkt. 65-5

6   at 6; Dkt. No. 58 at 12. As a result, the parties have made little progress towards completion of

7   the many tasks listed in the case management order.

## II.  LEGAL STANDARD

For purposes of this dispute, the parties agree that California C.C.P. § 2019.210 applies here. The provision requires the party asserting trade secret misappropriation to "identify the trade secret with reasonable particularity" as a condition for obtaining discovery related to the trade secret. Cal. C.C.P. § 2019.210.

The "reasonable particularity" required by § 2019.210 should be reviewed in light of the purposes of the statute:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 833–34 (2005) (citation omitted); *see also Loop AI Labs v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) (same). Thus, a plaintiff is required "to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular*, 132 Cal. App. 4th at 835 (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)). Even so, compliance with the particularity requirement "does not require the designation itself to detail how the trade secret differs from matters of general knowledge in the trade." *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018

WL 2117379, at *2 (N.D. Cal. May 8, 2018). "Instead, § 2019.210 'was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery.'" *Id.* (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009)).

"'Reasonable particularity' mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation." *Advanced Modular*, 132 Cal. App. 4th at 835. "Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence." *Id.* at 835–36. Rather, "reasonable particularity" means that:

> [T]he plaintiff must make some showing that it is reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

*Id.* at 836 (citing *City of Santa Cruz v. Municipal Court*, 49 Cal.3d 74, 90 (1989)).

"The degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case." *Id.* For example, where "the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id.* However, "at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate." *Id.* "What is required is not absolute precision, but 'reasonable particularity.'" *Id.*

In assessing the adequacy of a trade secret disclosure, "the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Brescia*, 172 Cal. App. 4th at 149. A court "must exercise its sound discretion in determining how much disclosure is necessary to comply with section 2019.210 under the circumstances of the case." *Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1349

(2009).

## III. DISCUSSION

### A. Sufficiency of Zeiss's Trade Secrets Disclosure

The parties' dispute regarding the sufficiency of Zeiss's trade secrets disclosure requires the Court to consider the following issues: (1) whether the disclosure clearly defines the boundaries of the alleged trade secrets, particularly with respect to multi-step processes or multi-element combinations; (2) whether the disclosure sufficiently distinguishes the alleged trade secrets from matters already in the public domain or known to persons in the relevant field; (3) whether and under what circumstances the disclosure may rely on documents to identify the alleged trade secrets; and (4) whether the disclosure must be organized as a numbered list of trade secrets.

#### 1. Clearly Defined Boundaries

Zeiss's trade secrets disclosure must be sufficiently particular to permit Sigray to understand what the trade secrets are. While some aspects of the disclosure satisfy this particularity requirement, the disclosure as a whole contains so much additional material that it is difficult to discern the boundaries of Zeiss's claims.

For example, Zeiss's disclosure begins with a narrative description of how it acquired the trade secrets (Dkt. No. 64-5 at 2), followed by a very high-level description of four categories within which the trade secrets lie (*id.* at 2-3), followed by a reference to "other trade secrets such as . . ." (*id.* at 3), followed by a list of documents that Zeiss says "further describe[]" its trade secrets (*id.*), which also purportedly "include experiential know-how" (*id.* at 4). This text precedes a much more specific explanation of some of Zeiss's trade secrets in sections A-D, but even this more specific explanation states that the trade secrets identified are exemplary or illustrative. *See, e.g., id.* at 7 ("The foregoing examples are provided for illustrative purposes; the full scope of Zeiss's trade secrets reflected in G000679 may be understood by reference to the document itself."). To the extent Zeiss purports to claim as trade secrets processes, designs, devices, compositions, or algorithms that are not, in fact, identified in its disclosure, it may not rely on references to examples or to the inclusion of "other" trade secrets in a document; rather it

must identify each alleged trade secret with reasonable particularity, without resort to qualifying language like "for example" or "including" to broaden the scope of its disclosure.

In addition, Zeiss's disclosure does not clearly define the scope of its alleged trade secrets comprising multi-step processes or multi-element combinations. Zeiss's disclosure can be read to suggest that each process or combination as a whole is a trade secret, but also that every discrete step or element within each process or combination, and every possible permutation of multiple steps or elements, are also distinct trade secrets. For example, Zeiss refers to page 2 of Exhibit 4 (G000679), which shows a flow chart with 17 nodes. Dkt. No. 64-5 at 6. The disclosure states that the flow chart and "any portions thereof" are Zeiss trade secrets. *Id.* If Zeiss means that the flow chart as a whole is its trade secret, it should make that position clear in its disclosure. If, in addition, Zeiss means that discrete portions of the flow chart are also trade secrets, it should specifically identify those portions. However, Zeiss may not use the phrase "any potions thereof" as a placeholder to capture any and all possible combinations that it may one day choose to claim as trade secrets. While it is certainly permissible to identify multi-step processes or multi-element combinations as trade secrets, *see Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *17–18 (N.D. Cal. Mar. 5, 2019), it is not permissible to claim all possible sub-sets and combinations of those steps or elements without actually identifying them, *see Waymo LLC v. Uber Techs., Inc. et al.*, No. C 17-00939 WHA, 2017 WL 5000352, at *7-8 (N.D. Cal. Oct. 30, 2017) ("The vastness of Waymo's disclosure was most unfair, for it placed defendants in the untenable position of having to prove that hundreds of subparts of the design schematic . . . either did not qualify as trade secret information or were not used in defendants' technology.").

### 2. Distinguished from Matters in the Public Domain

Sigray argues that because Zeiss uses broad, catch-all language to describe its trade secrets by reference to exhibits, its disclosure suggests that "every piece of information within its Identifications Exhibits is a trade secret," even if that that information expressly refers to matters in the public domain. Dkt. No. 67 at 16; *see also id.* at 9. The Court agrees. While Zeiss is not required to describe its trade secrets in a manner that proves they are not publicly known, it must

6

take care not to inadvertently include such public domain material by referring indiscriminately to documents that "include" trade secrets but that also include materials that clearly are in the public domain.

### 3. Reliance on Documents

Sigray argues that Zeiss should not be permitted to refer to documents in lieu of identifying its alleged trade secrets with reasonable particularity. Dkt. No. 67 at 5, 16-17. "As a general matter, identification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity." *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *3 (N.D. Cal. Jan. 10, 2019). The problem here is that Zeiss's disclosure is not limited to citations to particular portions of documents that disclose its trade secrets. While Zeiss is free to cite to and incorporate portions of documents in its trade secrets disclosure without reproducing the text of those documents, it may not simply refer to a document in its entirety as "including" trade secrets, without specifying what the trade secret is. In addition, Zeiss may not refer to "other documents and records" cited within the specific documents referenced in its disclosure and claim that it has identified trade secrets contained in *those* "other" documents and records, without specifying what those documents are and the contents that comprise the alleged trade secrets.

### 4. Organized as Numbered List

Sigray argues that Zeiss should be required to identify its trade secrets in the form of a numbered list. Dkt. No. 67 at 19–21. In another matter, the Court required a trade secrets plaintiff to identify each alleged trade secret as a separate item in list form. *See Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *2–3 (N.D. Cal. Jan. 10, 2019). However, that requirement was tailored to the specific needs of that case. No authority supports Sigray's argument that a trade secrets disclosure must take the form of numbered list. So long as Zeiss identifies its trade secrets with reasonable particularity, its disclosure will be sufficient.

### B. Sigray's Document Production

Zeiss contends that even if its trade secrets disclosure does not comply with § 2019.210, the Court should nevertheless order Sigray to produce technical documents sufficient to show the

structure, function, and operation of the Sigray accused products because the case management order independently requires such production. Dkt. No. 65 at 12–13. In addition, Zeiss argues that § 2019.210 controls only discovery relating to the alleged trade secrets and that Sigray should begin production of discovery relating to Zeiss's patent infringement claims.

The Court denies Zeiss's motion to compel production of Sigray's technical documents. While Zeiss is correct that § 2019.210 applies only to trade secrets discovery, the parties jointly proposed, and the presiding judge ordered, that Sigray's obligation to produce technical documents turned on Zeiss's identification of its trade secrets pursuant to § 2019.210, regardless of whether those documents concern Zeiss's trade secrets claims, its patent infringement claims, or both. As explained above, Zeiss has not yet provided a trade secrets disclosure that complies with § 2019.210. Moreover, to the extent Zeiss wishes to obtain relief from the case management order, it must seek relief from the presiding judge.

## IV. CONCLUSION

Accordingly, the Court denies Zeiss's motion regarding the sufficiency of its trade secrets identification and to compel production of documents.

**IT IS SO ORDERED.**

Dated: November 9, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge