UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL ZEISS X-RAY MICROSCOPY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SIGRAY, INC.,<br><br>Defendant. | Case No. 5:21-cv-01129-EJD<br><br>**CLAIM CONSTRUCTION ORDER** |

Plaintiff, Carl Zeiss X-Ray Microscopy, Inc. ("Zeiss"), brings this suit against Defendant, Sigray, Inc., ("Sigray"), for infringement of U.S. Patent No. 7,057,187 (the " '187 Patent") and U.S. Patent No. 7,400,704 (the " '704 Patent"). The parties dispute the proper construction of three terms and have filed briefs in support of their proposed constructions. *See* Zeiss's Opening Claim Construction Br. ("Zeiss Opening"), ECF No. 88; Sigray's Responsive Claim Construction Br. ("Sigray Resp."), ECF No. 91; Zeiss's Reply Claim Construction Br. ("Zeiss Reply"), ECF No. 92. Having carefully considered the parties' briefing, the record, and the arguments made at hearing, the Court construes the contested language of the patents-in-suit as set forth below.

I.  **BACKGROUND**

The patents-in-suit generally pertain to technology for x-ray microscopy. The '187 Patent, entitled "Scintillator Optical System and Method of Manufacture," describes how structures known as scintillators can be used in x-ray microscopy. In an x-ray microscope, images can be detected using electronic detectors. Decl. of Charles N. Reese, Ex. 1 ('187 Patent) at 1:9–12, ECF No. 88-2. However, a significant challenge with using electronic detectors is that the high energy

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER

1

of the x-rays can damage those detectors. *Id.* at col. 1:46–47. Scintillators can be used to mitigate the disadvantages of electronic detectors. A scintillator absorbs high-energy x-ray light and converts it to lower-energy visible light. *Id.* at col. 2:15–17, 57–59. This prevents damaging radiation from reaching the detector, therefore protecting the detector from damage. *Id.* at col. 2:10–12.

The '704 Patent is titled, "High resolution Direct-Projection Type X-Ray Microtomography System Using Synchrotron or Laboratory-Based X-Ray Source." It discloses an x-ray imaging system that combines multiple types of magnification. Decl. of Charles N. Reese, Ex. 2 ('187 Patent) at col. 2:47–51, ECF No. 88-3. This system allows users to manipulate the sample being imaged with multiple motion stages. *Id.* at col. 3:28–47. It is these stages that are relevant to this claim construction.

## II.   LEGAL STANDARD

Claim construction is a question of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citation omitted). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id.* (citation omitted).

When construing disputed terms, courts begin with "the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (citations omitted). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (citation omitted). The words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13 (citations omitted). However, the person of ordinary skill in the art does not work from a blank slate—rather, she "is deemed to read the claim term not only in

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER
2

the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313. Thus, courts "have long emphasized the importance of the specification in claim construction." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (citation omitted). Courts have explained that the specification is "always highly relevant" and "[u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The prosecution history of a patent—which "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office]"—is also intrinsic evidence of a claim term's meaning. *Id.* at 1317. But since the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Nonetheless, there are times when prosecution history is controlling. Where a patentee disavows certain meanings during prosecution, the doctrine of prosecution disclaimer "preclude[es] [her] from recapturing through claim interpretation [those] meanings." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). To qualify as a disclaimer, such disavowal "must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013). That is a high bar: the disavowal "must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (quoting *Omega*, 334 F.3d at 1325).

Finally, courts are also authorized to consider extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 (internal citations omitted). Although courts may consider evidence extrinsic to the patent and prosecution history, such evidence is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1317–18 (citation omitted). Thus, while extrinsic evidence may be useful in claim

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER
3

construction, ultimately "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

## III. CONSTRUCTION OF DISPUTED TERMS

### A. '187 Patent, claim 1: "a substrate for spacing the scintillator material from the lens system"

| Zeiss's Proposed Construction | Sigray's Proposed Construction | Court's Construction |
|---|---|---|
| a substrate to ensure a stable distance between the scintillator material and the lens system | a substrate attached to the scintillator material on one side and the lens system on the other side | a substrate to ensure a stable distance between the scintillator material and the lens system |

#### 1. Claim Language

Claim 1 of the '187 Patent reads as follows:

> A scintillator optical system comprising:
>   scintillator material;
>   a lens system for collecting light generated in the scintillator material, wherein the lens system comprises an objective lens and a tube lens; and
>   a substrate for spacing the scintillator material from the lens system.

'187 Patent at col. 9:28–34.

#### 2. Analysis

The crux of the parties' disagreement as to the construction of this term is the meaning of "for spacing." Zeiss proposes that "for spacing" refers to arranging components a certain distance apart, while Sigray proposes that "for spacing" requires that the substrate be attached to the scintillator and lens system. Although the parties devote a significant number of pages to this disputed term, the Court finds that construction is straightforward. Zeiss's construction is correct.

In this case, the specification contains a particularly clear statement of the purpose of the substrate: "The use of this substrate **214** ensures that the distance between the scintillator material **210** and the objective lens system **216** is highly stable." '187 Patent at col. 6:62–65. This statement explains that the purpose of the substrate is to maintain a specific distance between the scintillator and lens system, which is precisely Zeiss's proposed construction. What is more, the

idea of arranging components a specific distance apart comports with the plain meaning of "spacing." By contrast, Sigray's proposed construction does not accord with the plain meaning of "spacing"—nothing about the word "spacing" conveys that there must be an attachment of some sort.

This language from the specification is sufficient on its own to resolve construction of the term, but the Court also notes that other evidence supports Zeiss's construction. As the Federal Circuit has held, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. Here, claims 7 and 18 are instructive.

Claim 7 depends from claim 1, so the doctrine of claim differentiation applies. Under that doctrine, it is "disfavor[ed] [to] read[] a limitation from a dependent claim into an independent claim." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014). While claim differentiation is only a presumption that can be overcome, that presumption is "especially strong" when "the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324–25 (Fed. Cir. 2012). That is the situation here, where claim 7 adds only one additional limitation to claim 1, requiring "the substrate thickness [to be] set based on a working distance of the lens system." '187 Patent at col. 9:48–49.

Even though this limitation is not equivalent to Sigray's proposed construction on its face, closer examination reveals that the limitation of claim 7 is subsumed within Sigray's proposed construction. That is because the specification defines "working distance" as "the distance between the front of the lens **220** and the object" and, in turn, defines "the object [to be] the scintillator material." '187 Patent at col. 5:66–col. 6:2. In other words, the working distance is the distance between the lens and scintillator material. As the thickness of a substrate that is attached to both the lens and the scintillator material is the equal to the distance between the lens and scintillator material, the thickness of a substrate under Sigray's proposed construction is the

working distance.  Thus, satisfying Sigray's proposed construction necessarily also satisfies the sole additional limitation of dependent claim 7, and the doctrine of claim differentiation disfavors Sigray's construction.

A similar line of reasoning emerges when considering claim 18.  Claim 18 is an independent claim that is nearly identical to claim 1, with one modification in bold:

> A scintillator optical system, comprising:
> scintillator material;
> a lens system for collecting light generated in the scintillator material; and
> a substrate for spacing the scintillator material from the lens system, **wherein the substrate thickness is set based on a working distance of the lens system**.

'187 Patent at col. 10:13–19 (emphasis added).  For the reasons addressed in the Court's analysis of claim 7, adopting Sigray's proposed construction of "a substrate for spacing the scintillator material from the lens system" would render redundant the limitation, "wherein the substrate thickness is set based on a working distance of the lens system."  And a construction that renders additional claim language superfluous is "highly disfavored."  *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) (quoting *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017)).

Finally, the Court observes that Sigray's proposed construction would serve to import limitations from a preferred embodiment, which the Federal Circuit has held to be improper.  Courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'"  *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1323).  Sigray points to language in the specification that, "[a]ccording to the invention, the scintillator material is attached to and preferably bonded to the

substrate." Sigray Resp. at 12 (quoting '187 Patent at col. 6:59–60).[1] In its view, the words, "according to the invention" clearly limits the claims to the embodiments in the specification.' *Id.* at 12–13. But that argument ignores that the section containing that language is titled, "Detailed Description of the *Preferred* Embodiments." '187 Patent at col. 5:14–15 (emphasis added). In that context, it is not clear that the patentee intends to limit the claims to the specification, so the language cited by Sigray does not constrain construction of the disputed term.

Accordingly, the Court adopts Zeiss's construction.[2]

**B.     '704 Patent, claim 7: "x-y-z axis motion stages to center the sample's region of interest at the rotation axis of the rotation stage"**

| Zeiss's Proposed Construction | Sigray's Proposed Construction | Court's Construction |
|---|---|---|
| a set of motion stages that collectively can be operated to center the sample's region of interest at the rotation axis of the rotation stage | a set of motion stages that collectively can be operated to center the sample's region of interest at the rotation axis of the rotation stage in each of the x, y, and z axes | a set of motion stages that collectively can be operated to center the sample's region of interest at the rotation axis of the rotation stage |

### 1.     Claim Language

Claim 7 of the '704 Patent reads as follows:

> An x ray imaging system, comprising:
>     a projection x ray stage including
>         an x ray source generating a diverging x ray beam; and
>         a scintillator for converting the diverging x ray beam, after
>             interacting with a sample, into an optical signal, wherein
>             a magnification of the projection x ray stage is between 1
>             and 10 times; and
>     a sample holder for holding and positioning the sample in
>         proximity to the scintillator, the sample holder comprising:
>         a rotation motion stage for rotating the sample in the x ray

---

[1] Sigray cited the wrong portion of the '187 Patent in its brief, but the Court corrects the pincite here.

[2] Sigray also offers an alternate construction that requires adjacency rather than attachment. Sigray Resp. at 17. The Court rejects that alternate construction for the same reason that it rejects Sigray's primary construction.

Sigray also suggests that Zeiss's proposed construction runs afoul of restrictions on means-plus-function claiming found in 35 U.S.C. § 112(f). Sigray Resp. at 16–17. But Section 112(f) applies to *claims*, not to proposed *constructions*, so that argument is unavailing

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER
7

```
                                  beam;
          x-y-z axis motion stages to center the sample's region of
              interest at the rotation axis of the rotation stage; and
          at least one z-axis motion stage for adjusting a source to-
              sample distance and a sample-to-detector distance with
              respect to the rotation motion stage and the x-y-z axis
              motion stages.
```

'704 Patent at col. 10:22–39.

### 2. Analysis

The parties largely agree on the proper construction for this term. Both propose constructions that begin, "a set of motion stages that collectively can be operated to center the sample's region of interest at the rotation axis of the rotation stage." Zeiss would stop there. But Sigray proposes additional narrowing language that the sample must be centered "in each of the x, y, and z axes." The Court finds that Sigray's additional language is not necessary and would confuse the issue.

The problem posed by Sigray's construction is that the additional language would be nonsensical in cases were the rotation axis pointed in the x, y, or z directions. Figure 1 of the '704 Patent illustrates this issue (*see* below). In the figure, the rotation stage **216** rotates along the y-axis. '704 Patent at col. 4:59–62. Thus, a sample can be centered along the rotation axis in only the x and z directions. It is meaningless to center the sample in the y direction because the rotation axis occupies that direction. Rather, it is sufficient to construe the term as simply requiring that the motion stages center the sample's region of interest "at the rotation axis," which is readily understandable and accommodates any orientation of the rotation axis.



FIG.1

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER

8

Consequently, the Court adopts Zeiss's proposed construction.

### C. '704 Patent, claim 10: "further comprising a y-axis sample motion stage for adjusting a vertical height sample in the x ray beam"

| Zeiss's Proposed Construction | Sigray's Proposed Construction | Court's Construction |
|---|---|---|
| further comprising a y-axis sample motion stage that can be operated to adjust a vertical height of the sample in the x-ray beam | further comprising a y-axis sample motion stage, which is in addition to any y-axis motion stage in the x-y-z axis motion stages, that can be operated to adjust a vertical height of the sample in the x-ray beam | further comprising a y-axis sample motion stage that can be operated to adjust a vertical height of the sample in the x-ray beam |

#### 1. Claim Language

Claim 10 of the '704 Patent reads as follows:

> An x ray imaging system as claimed in claim 7, further comprising a y-axis sample motion stage for adjusting a vertical height of the sample in the x ray beam.

'704 Patent at col. 10:46–48.

#### 2. Analysis

As with the previous term, the parties largely agree on the proper construction here. And once again, it is Sigray that proposes additional language. It proposes that, because claim 10 depends from claim 7, the y-axis recited by claim 10 must be "in addition to any y-axis motion stage in the x-y-z motion stages" recited by claim 7; namely, the y-axis motion stage must be different than the x-y-z axis motion stages that the Court just construed above. Sigray Resp. at 19–21. According to Sigray, the use of "further comprising" indicates that the y-axis motion stage recited by claim 10 must be a new structure not present in claim 7; if claim 10 intended to recite a new function that could be accomplished by an existing structure, it should have used "wherein" instead. *Id.* at 20–21.

The Court is not persuaded by Sigray's argument. Sigray cites no authority for its general assertions about the meaning of "further comprising" and "wherein." Further, the '704 Patent provides an example of the language that the patentee should have used if it intended to require a

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER
9

new y-axis motion stage in addition to the existing motion stages. Claim 7 recites, "at least one z-axis motion stage . . . with respect to . . . the x-y-z axis motion stages. '704 Patent at col. 10:36–39. The parties agree that this language requires the "at least one z-axis motion stage" to be separate from any z-axis motion stage that is part of the existing x-y-z motion stages. Joint Claim Construction Statement at 2, ECF No. 87. Claim 10 does not use similar language, so the Court concludes that the patentee did not intend to require a new y-axis motion stage and therefore adopts Zeiss's construction.

## IV. CONCLUSION

For the reasons set forth above, the Court construes the disputed terms as follows:

| Claim Terms | Court's Construction |
|---|---|
| '187 Patent, claim 1: "a substrate for spacing the scintillator material from the lens system" | a substrate to ensure a stable distance between the scintillator material and the lens system |
| '704 Patent, claim 7: "x-y-z axis motion stages to center the sample's region of interest at the rotation axis of the rotation stage" | a set of motion stages that collectively can be operated to center the sample's region of interest at the rotation axis of the rotation stage |
| '704 Patent, claim 10: "further comprising a y-axis sample motion stage for adjusting a vertical height sample in the x ray beam" | further comprising a y-axis sample motion stage that can be operated to adjust a vertical height of the sample in the x-ray beam |

**IT IS SO ORDERED.**

Dated: December 12, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-01129-EJD
CLAIM CONSTRUCTION ORDER
10